**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Cassidy Ward** | * | |
| **2211 Erin Way** | | |
| **Bel Air, MD 21015** | * | |
| | | |
| **Avery Dawson** | * | |
| **336 Homeland South** | | |
| **Baltimore, MD** | * | |
| | | |
| **Taylor Hyde** | * | |
| **107 W. Heather Rd.** | | |
| **Bel Air, MD 21014** | * | |
| | | |
| **Benjamin Lust** | * | |
| **3121 Birch Brook Lane** | | |
| **Abingdon, MD 21009** | * | **Case No. _____** |
| | | **JURY TRIAL REQUESTED** |
| **Melanie Mason** | * | |
| **1604 Cedar Run** | | |
| **Pocomoke, MD 21851** | * | |
| | | |
| **Plaintiffs** | * | |
| | | |
| **v.** | * | |
| | | |
| **Higgins Crab Company LLC** | * | |
| **(d/b/a Higgins Crab House)** | | |
| **3102 Philadelphia Ave.** | * | |
| **Ocean City, MD 21842** | | |
| | * | |
| **Robert Higgins** | | |
| **2 48th Street Unit 1104.** | * | |
| **Ocean City, MD 21842** | | |
| | * | |
| **Defendants** | | |

_____/

**COLLECTIVE ACTION COMPLAINT UNDER THE**
**FAIR LABOR STANDARDS ACT AND CLASS ACTION COMPLAINT**

    Plaintiffs, Cassidy Ward, Avery Dawson, Taylor Hyde, Benjamin Lust, and Melanie

Mason, by and through their undersigned counsel, state a collective action complaint against

Defendants Higgins Crab Company LLC ("Higgins Crab Company") and Robert Higgins ("Higgins"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and further state a putative Federal Rule of Civil Procedure 23 class action against Defendants alleging supplemental state law claims under the Maryland Wage and Hour Law, Md. Code Ann., LE Art. § 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., LE Art. § LE 3-501 *et seq*. ("MWPCL"), and request a jury trial, as follows:

## **Introduction**

1.      Plaintiffs bring this collective action for unpaid minimum wages, overtime wages, unlawful retention of tips, liquidated damages, and other relief, as provided by the FLSA, 29 U.S.C. § 201 *et seq*.

2.      Plaintiffs also seek unpaid minimum wages and overtime wages, liquidated and statutory damages pursuant to the MWHL and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

## **Jurisdiction and Venue**

3.      This Court has subject matter/original jurisdiction over this action pursuant to 29 U.S.C. § 206, 29 U.S.C. § 207, and 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because the minimum wage, overtime wage, and failure to pay wage claims asserted under the MWHL and MWPCL are related to the FLSA claims, insofar as they rely on the same evidence and are based on the same factual allegations as the FLSA claims, that they form part of the same case or controversy.

5.      Venue and personal jurisdiction are proper pursuant to 28 U.S.C. § 1391(b), because Defendants do business within this judicial district and the events and omissions giving rise to the

claims in this Complaint occurred in this judicial district.

## Parties

6.      Defendant Higgins Crab Company LLC is a corporation formed in the State of Maryland to engage in the operation of a restaurant, bar, and related activities.

7.      Within the three years preceding the filing of this lawsuit, Defendant Higgins Crab Company has been used by Defendant Robert Higgins to operate two restaurants/bars that do business as Higgins Crab House.

8.      One location is at 12801 Coastal Highway, Ocean City, MD 21842, also known as "Higgins North."

9.      The other location is at 3102 Philadelphia Ave., Ocean City, MD 21842, also known as "Higgins South."

10.     Within the last three years preceding the filing of this lawsuit, and upon information and belief, both restaurants have paid wages to employees through the payroll accounts of Defendant Higgins Crab Company.

11.     Both restaurants rely on the same concept, the same menu, the same ingredients, the same website, including for carry-out, and the same ownership.

12.     Within the last three years preceding the filing of this lawsuit, and as set forth in further detail below, human resource and payroll decisions have been carried out by Defendant Robert Higgins.

13.     Within the last three years preceding the filing of this lawsuit, Defendant Higgins Crab Company has had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

14.     Within the last three years preceding the filing of this lawsuit, Defendant Higgins Crab

Company has paid and hence has employed at least two or more employees who are engaged in commerce, produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA. For instance, there are two or more employees of Defendant Higgins Crab Company who negotiate and purchase food from producers and suppliers who operate in interstate commerce.

15.     Defendant Higgins Crab Company has employees who cook, serve, and otherwise handle food and beverages that have moved in and crossed interstate and even international boundaries. For example, Defendants steam crabs, cook ribs, fry chicken, and make crab dip and distribute them to customers across the region via carry-out service.

16.     Defendants operate a liquor store that stocks and sells beers, wines and liquors that have been manufactured across the country and even internationally. Defendants also manufacture and sell merchandise, including Higgins branded drink "koolers" and a "crab kit" containing Higgins branded crab spice and crab mallets, that are shipped across the country.

17.     There are employees of Defendant Higgins Crab Company, such as the Plaintiffs, who regularly sell, handle and serve food and beverages that has moved in interstate commerce, and who regularly process credit card transactions for customer payments.

18.     There are employees of Defendant Higgins Crab Company who use cleaning products, dishes, tools, utensils, napkins, menus, and signage, among other items, that have moved in interstate commerce.

19.     Accordingly, subject matter jurisdiction exists because Defendant Higgins Crab Company is an entity covered under the FLSA. Defendants also satisfy the coverage provisions of the MWHL. As a covered enterprise, Defendant Higgins Crab Company has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

20.    Defendant Higgins is the owner of Defendant Higgins Crab Company and both of its restaurants.

21.    Defendant Higgins has complete operational control of Defendant Higgins Crab Company, and upon information and belief, maintains custody and control of Defendant Higgins Crab Company's business records and is responsible for maintaining those records, such as payroll records.

22.    Additionally, upon information and belief, for all times material to this case, Defendant Higgins was, and continues to be, aware of operational issues throughout the restaurant, and is knowledgeable of Defendant Higgins Crab Company's past and present employment practices and policies.  Defendant Higgins, for example, held a server meeting at the beginning of the summer of 2022 where he covered the rules, policies, and expectations of the restaurant, including expectations for schedules and timeliness and grounds for termination.

23.    Upon information and belief, for all times material to this case, Defendant Higgins possessed, and continues to possess, the authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at Defendant Higgins Crab Company including Plaintiffs, and possessed the ability to hire employees and have employees terminated.

24.    Upon information and belief, Defendant Higgins received, and continues to receive, income from Defendant Higgins Crab Company and has been enriched by the failure of the Defendants to properly pay their workers.

25.    At all times material herein, Defendant Higgins has been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.  Defendant Higgins is jointly and individually liable for damages to the Plaintiffs, under the FLSA, MWHL, and MWPCL.

26.    As set forth below, Plaintiffs, on behalf of themselves and others similarly situated, seek

unpaid minimum and overtime wages, and unlawfully retained tips in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

27.    There exists more than one hundred fifty (150) restaurant employees of Defendants at Higgins Crab House who have worked for Defendants in the last three years as restaurant employees within the State of Maryland, and who have not received minimum and/or overtime wages, including at the proper rate, and who have been subject to the unlawful retention of tips.

28.    Plaintiffs, and other similarly situated employees, who received hourly pay, were not exempt under the FLSA and MWHL's requirements.

29.    By failing to pay the statutory minimum and overtime wages and unlawfully retaining tips that were due to Plaintiffs, and other similarly situated employees, Defendants willfully violated very clear and well-established minimum and overtime wage, and tip retention provisions of the FLSA.  Plaintiffs further allege that Defendants violated the minimum and overtime wage provisions of the MWHL with respect to putative class members.  In addition to actual sums owed, Plaintiffs, on behalf of themselves and other similarly situated employees, seek liquidated (statutory) damages pursuant to the FLSA, prejudgment interest on all amounts owed under the MWHL, three times the overtime owed under the MWHL pursuant to the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs as provided under the FLSA, the MWHL, and the MWPCL

## **Factual Allegations**

### General Factual Allegations

30.    Within the three years preceding the filing of this lawsuit, Plaintiffs, and other similarly situated employees, were employed by Defendants as servers.

31.     Plaintiffs were paid $3.63/hour plus tips.

32.     Regardless of the amount of tips earned by Plaintiffs, at the end of the night, Plaintiffs would have to pay the equivalent of 1% of their total sales into a tip pool, *even if they earned no tips that night*.

33.     The payment would be put into an envelope where Plaintiffs would write their name, the date, and the amount of the payment into the tip pool.  The envelopes would then be placed into a locked box, which the Defendants would then collect.

34.     Plaintiffs were told that tip outs were paid as part of an end-of-season bonus to employees who perform kitchen work in the back of the house, including cooks on the line and workers in the steam room; however, Plaintiffs were unable to confirm that their tips were paid to "back of the house" employees.  Upon information and belief, the tips that were received from Plaintiffs were not fully paid to back of the house employees and instead retained by Defendants and other senior management staff.

35.     These tips did *not* go to other tipped employees, such as bartenders, bussers or expo workers.

36.     Line cooks and steam room workers are not employees who customarily and regularly receive tips, and upon information and belief were paid at least the full minimum wage.

37.     Upon information and belief, managers with supervisory authority, including the authority to hire and fire (or make recommendations in hiring and firing given particular weight by Defendant Higgins), also received or retained some or all of the portion of the tip pool intended for line cooks and steam room workers as well.

38.     Additionally, all Plaintiffs were subject to an unlawful policy maintained by Defendants that required them to pay for business losses, such as customer walkouts, and therefore denied all

Plaintiffs the possibility of retaining all of their tips.

39.    Plaintiff Lust, for example, recalls an instance where a $100 bill, given as payment by one table, was stolen out of his book by another table.  As a result, Plaintiff Lust had to cover that $100 with his tips, and after completing his check out and paying his tip out at the end of the night, ended up owing more money that he even earned that night.

40.    In another example, Plaintiff Ward recalls an instance in July 2022 where another server owed Defendants upwards of $200.  She also recalls two instances of servers paying for business losses in August 2022, including one where a table walked out, leaving a $150 bill that another server had to pay.

41.    To assist their fellow servers, other servers, such as Plaintiffs would contribute money to cover business losses that occurred to a restaurant server, to mitigate the severity of the loss as to that restaurant server.

42.    Plaintiff Mason, for example, recalls approximately eight different times servers were required to pay for business losses, and whereby other servers would contribute to help mitigate the severity of the loss.

43.    Plaintiff Mason recalls contributing between ten (10) and fifteen (15) dollars each time to help out other fellow servers.

Cassidy Ward

44.    Lead Plaintiff Ward initially began working for Defendants on or about May of 2021 and worked through the summer to or about September 2021.  Defendants' business is seasonal and had its busy season during the summer from May to September, and its off season from October until about April.

45.    Plaintiff Ward then started working for Defendants again on or about March/April 2022

and worked until or about September 5, 2022.

46.     Plaintiff Ward did not have a set schedule but would typically work five days a week with two weekdays off.

47.     Depending on how busy the restaurant was, she would work from 11:00 am to close, which was around 11:00 pm, or she would work a shorter shift from 4:00 pm to close.  Regardless of the length of her shift, Plaintiff Ward was not given any designated breaks.

48.     In 2021, Plaintiff Ward averaged twenty-five (25) to thirty (35) hours per work week, depending on how busy the restaurant was.

49.     In March/April 2022, Plaintiff Ward worked only a few shifts on the weekend, averaging twelve (12) to fifteen (15) hours per work week.

50.     However, once the busy season started backup in May, Plaintiff Ward averaged thirty-five (35) to fifty (50) hours per work week, depending on how busy the restaurant was.

51.     At all times Plaintiff Ward was employed by Defendants, she performed manual work as a restaurant server.

52.     During the busy season of 2022, Plaintiff Ward regularly worked in excess of forty (40) hours per work.  Plaintiff Ward recalls that she would often work twelve or more hour days, particularly when it was busy.

53.     In addition to the hours she was scheduled for, Plaintiff Ward regularly picked up shifts, either in the form of working additional days or converting single shifts into doubles.

54.     Despite this, Plaintiff Ward's paystubs regularly stated she worked no overtime hours whatsoever because Defendants altered and reduced the number of hours actually worked and reported by Plaintiff Ward on her paystubs.

55.     For example, for the pay period 7/17/2022 to 7/30/2022, Plaintiff Ward recalls working

approximately fifty (50) hours during the first week of the bi-weekly pay period, and approximately thirty-five (35) hours her second pay period.  Yet, the corresponding paystub paid her for only working 74.58 hours, with no overtime hours at all, despite the fact she worked approximately ten (10) hours in excess of forty (40) hours during the first work week of that pay period.

56.     Defendants reduced the number of actual hours worked and reported by Plaintiff Ward as part of a deliberate effort to reduce the wages they needed to pay to her and similarly situated employees in order to avoid paying minimum and overtime compensation for hours worked.

57.     Defendants undercounted Plaintiff Ward's hours so that her hours would never exceed 80 hours in a two-week pay period.

58.     Moreover, when Plaintiff Ward first began working for Defendants on or about May of 2021, Plaintiff Ward worked two to three training shifts, each approximately seven hours long. Plaintiff Ward, however, received *no* pay whatsoever for these training shifts.

<u>Avery Dawson</u>

59.     Plaintiff Dawson initially began working for Defendants on or about May 16, 2022 and worked through the summer to or about July 6, 2022.

60.     Plaintiff Dawson did not have a set schedule but would typically work four to five days a week with two weekdays off.

61.     Depending on how busy the restaurant was, she would work from 11:00 am to 4:00 pm, or from 4:30 pm to 11:30 pm or midnight.  Regardless of the length of her shift, Plaintiff Dawson was not given any designated breaks.

62.     Plaintiff Dawson averaged thirty (30) hours per work week.

63.     At all times Plaintiff Dawson was employed by Defendants, she performed manual work

as a restaurant server.

64.    When Plaintiff Dawson first began working for Defendants she worked two to three training shifts, each approximately seven hours long.  Plaintiff Dawson, however, received *no* pay whatsoever for these training shifts.

## Taylor Hyde

65.    Plaintiff Hyde initially began working for Defendants on or about May 17, 2021 and worked through the summer to or about July 31, 2021.

66.    Plaintiff Hyde typically worked Monday, Tuesday, Friday and Sunday.

67.    Depending on how busy the restaurant was, she would work from 11:00 am to 4:30 pm, or from 4:30 pm to 11:30 pm or midnight.  Regardless of the length of her shift, Plaintiff Hyde was not given any designated breaks.

68.    Plaintiff Hyde averaged twenty-six (26) hours per work week.

69.    At all times Plaintiff Hyde was employed by Defendants, she performed manual work as a restaurant server.

70.    When Plaintiff Hyde first began working for Defendants she worked three to four training shifts, each approximately seven hours long.  Plaintiff Hyde, however, received *no* pay whatsoever for these training shifts.

## Benjamin Lust

71.    Plaintiff Lust initially began working for Defendants on or about April 1, 2022 and worked through the summer to or about October 1, 2022.

72.    Plaintiff Lust did not have a set schedule but would typically worked five days a week with two weekdays off.

73.    Depending on how busy the restaurant was, he would work from 4:00 pm to close, which

was around 11:00 pm, or he would work from 10:30 am to close.  Regardless of the length of his shift, Plaintiff Lust was not given any designated breaks.

74.    When Plaintiff Lust first started working for Defendants, he worked between twenty (20) to thirty (30) hours per work week.

75.    As the restaurant became busier as it entered the busy season, Plaintiff Lust worked between thirty (30) to forty (40) hours per work week and would occasionally work even more than forty (40) hours per work week.

76.    At all times Plaintiff Lust was employed by Defendants, he performed manual work as a restaurant server.

77.    Despite Plaintiff Lust having worked in excess of forty (40) hours per work week on several occasions, Plaintiff Lust's paystubs regularly stated he worked no overtime hours whatsoever because Defendants altered and reduced the number of hours actually worked and reported by Plaintiff Lust on his paystubs.

78.    Defendants did this as part of a deliberate effort to reduce the wages they needed to pay to employees and avoid paying minimum and overtime compensation for hours worked.

79.    Defendants undercounted Plaintiff Lust's hours so that his hours would never exceed 80 hours in a two-week pay period.

80.    Moreover, when Plaintiff Lust first began working for Defendants, he worked two to three training shifts, each approximately seven hours long.  Plaintiff Lust, however, received *no* pay whatsoever for these training shifts.

<u>Melanie Mason</u>

81.    Plaintiff Mason initially began working for Defendants on or about May of 2022 and worked through the summer to or about early October 2022.

82.    Plaintiff Mason did not have a set schedule but would typically work five days a week with two weekdays off.

83.    Depending on how busy the restaurant was, she would work from 11:00 am to close, which was around 11:00 pm, or she would work a shorter shift from 4:30 pm to close.  Regardless of the length of her shift, Plaintiff Ward was not given any designated breaks.

84.    When Plaintiff Mason first started, she averaged thirty-eight (38) hours per work week, depending on how busy the restaurant was.

85.    By July, however, her hours increased based on the needs of the restaurant, and she averaged forty-five (45) hours per week.

86.    During her last few work weeks at the end of September/beginning of October, Plaintiff Mason averaged fifty (50) hours per week.

87.    At all times Plaintiff Mason was employed by Defendants, she performed manual work as a restaurant server.

88.    During the busy season of 2022, Plaintiff Mason regularly worked in excess of forty (40) hours per work.  Plaintiff Mason recalls that she would often work two to three doubles per week, which were work days of at least twelve hours.

89.    Despite this, Plaintiff Mason's paystubs regularly stated she worked no overtime hours whatsoever because Defendants altered and reduced the number of hours actually worked and reported by Plaintiff Mason on her paystubs.

90.    Defendants did this as part of a deliberate effort to reduce the wages they needed to pay to employees and avoid paying minimum and overtime compensation for hours worked.

91.    Defendants undercounted Plaintiff Mason's hours so that her hours would never exceed 80 hours in a two-week pay period.

92.    Moreover, when Plaintiff Mason first began working for Defendants, she worked a training shift, which was about seven hours long.  Plaintiff Mason, however, received *no* pay whatsoever for this training shift.

93.    Additionally, Defendants failed to pay Plaintiff Mason for her final two bi-weekly pay periods, totaling approximately 200 hours of work that she has not been compensated for at all.

94.    Plaintiff Mason attempted to call Defendants on three different occasions in order to get her final payments, and also sent text messages to John Merman, a manager.  However, neither Mr. Merman, nor any other agent or representative of Defendants ever resolved Plaintiff Mason not receiving her final two paychecks.

<u>General Allegations</u>

95.    While the FLSA and MWHL allows employers to pay less than minimum wage to employees who receive tips, 29 U.S.C. § 203(m) and Md. Ann Code LE art. § 3-419, in order to even *potentially* take a so-called "tip credit" and apply it toward the employee's minimum wage, an employer must inform the employee that it will take a tip credit and otherwise strictly comply with the regulatory requirements of 29 C.F.R. § 531.59(b), which includes not retaining an employee's tips except in a valid tip pooling arrangement.

96.    Defendants violated 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 by failing to inform all Plaintiffs, and others similarly situated employees, that it was taking a so-called "tip credit" against Defendants' minimum wage obligations, the amount of the tip credit, or that Plaintiffs (and other tipped workers, including restaurant servers) had the right to retain all tips except in a valid tip pooling arrangements, or any of the other requirements set out by law.  *See* 29 C.F.R. § 531.59(b).

97.    Defendants also violated 29 U.S.C. § 203(m) by maintaining an invalid tip pooling

arrangement practice of requiring Plaintiffs to share their tips with employees who are not customarily tipped employees, resulting in improper deductions from tips owed to the Plaintiffs.

98.    Defendants further violated 29 U.S.C. § 203(m) by subjecting Plaintiffs to an unlawful policy that required them to pay for business losses, such as customer walkouts, and therefore denied Plaintiffs the possibility of retaining all of their tips.

99.    The costs associated with customer walkouts and mis-rung orders are just like any other business expense of an employer, which cannot be charged to an employee and thereby reduce an employee's wages below the statutory minimum wage.

100.    There is no statutory basis allowing for Defendants to deduct any business expenses from the wage rate set prescribed in 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419.

101.    Defendants were therefore not permitted to take a tip credit against their minimum wage obligations, and instead were required to have paid at least $7.25/hour for each of the hours worked by Plaintiffs, as opposed to $3.63/hour for regular (non-overtime) hours of work.

102.    By failing to properly pay the minimum wages due to Plaintiffs, Defendants willfully violated very clear and well-established minimum wage "tip credit" provisions of the FLSA and MWHL.

103.    In addition, by maintaining a policy that required servers, such as the Plaintiffs, to pay out tips voluntarily left by customers for the servers, such as the Plaintiffs, into a tip pool that would go to line cooks, steam room employees, and managers, the Defendants willfully violated clear and well-established anti-tip retention provisions of the FLSA.

104.    Had Defendants not maintained this mandatory tip pool, Plaintiffs would have retained a larger amount of tips that were voluntarily left for them by customers.

105.    Moreover, by maintaining a policy that required servers, such as the Plaintiffs, to pay for

business losses, including walkouts, the Defendants willfully violated clear and well-established tip retention provisions of the FLSA.

106.    Had Defendants not maintained this mandatory policy of servers paying for business losses, Plaintiffs would have retained a larger amount of tips that were voluntarily left for them by customers.

107.    Finally, Defendants violated the FLSA, the MWHL, and MWPCL insofar as they failed to properly pay Plaintiff Ward, Mason and Lust, and other similarly situated employees, overtime when they worked over forty hours per week, in the amount of 1½ times their respective regular rate of pay (as calculated in accordance with U.S. Department of Labor regulations), for overtime hours worked in excess of forty (40) hours per week

108.    By reducing the number of hours actually worked and reported by Plaintiff Ward, Mason, Lust and other similarly situated employees, and by failing to pay the overtime wages due to Plaintiff Ward, Mason, and Lust and other similarly situated employees, Defendants willfully violated very clear and well-established overtime wage provisions of the FLSA and MWHL.

109.    By failing to pay Plaintiffs, and other similarly situated employees, the minimum and overtime wages owed to them, as well as subjecting Plaintiffs to an invalid tip pooling arrangement, Plaintiffs, and other similarly situated employees, seek liquidated (statutory) damages pursuant to the FLSA, pre-judgment interest on all amounts owed under the MWHL, and three times the minimum and overtime wages owed under the MWHL pursuant to the MWPCL, as well as attorneys' fees and costs as provided under the FLSA, the MWHL and MWPCL.

### Class Allegations

110.    Plaintiffs seek to represent two distinct classes: (A) one FLSA Class (Counts I-III); and (B) one Maryland Class (Counts IV-VI).

A. The "FLSA Class" consists of three distinct sub-classes:

    i. The "FLSA Minimum Wage Sub-Class" (Count I) consisting of all persons who performed server work at Higgins Crab House at any time during the period beginning three years from the date of commencement of this lawsuit through the date of class certification, who are either named or file an opt-in form with this court, and who performed tipped work at an hourly rate less than $7.25/hour.

    ii. The "FLSA Overtime Wage Sub-Class" (Count II) consisting of all persons who performed server work at Higgins Crab House at any time during the period beginning three years from the date of commencement of this lawsuit through the date of class certification, who are either named or file an opt-in form with this Court, and who performed tipped work at an hourly rate less than $7.25/hour, and who worked more than forty (40) hours in a statutory workweek.

    iii. The "FLSA Anti-Tip Retention Sub-Class" (Counts III) consisting of all persons who performed server work at Higgins Crab House at any time during the period beginning three years from the date of commencement of this lawsuit through the date of class certification, who are either named or file an opt-in form with this Court, and who performed tipped work at an hourly rate less than $7.25/hour, and who was required to pay out a portion of their tips into a tip pool.

B. The "Maryland Class" consists of two distinct sub-classes arising under the MWHL and MWPCL:

    i. The "Maryland Minimum Wage Sub-Class" (Count IV, VI) consisting of all persons who performed server work at Higgins Crab House at any time during the period beginning three years from the date of commencement of this lawsuit through the

date of class certification, who are either named or fail to file an opt-out form with this court, and who performed tipped work at an hourly rate less than the then-applicable Maryland minimum wage.

ii. The "Maryland Overtime Wage Sub-Class" (Counts V-VI) consisting of all persons who performed server work at Higgins Crab House at any time during the period beginning three years from the date of commencement of this lawsuit through the date of class certification, who are either named or fail to file an opt-out form with this Court, and who performed tipped work at an hourly rate less than the then-applicable Maryland minimum wage, and who worked more than forty (40) hours in a statutory workweek

C. Excluded from the FLSA Class and the Maryland Class are bona fide owners, officers, managers and directors of Defendants.

111. There are questions of fact and law common to both classes (FLSA Class and the Maryland Class), including but not limited to:

(a)    Whether Defendants violated 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 by failing to properly inform Plaintiffs, and other similarly situated servers, of the so-called tip credit provisions of the FLSA and MWHL.

(b)    Whether Defendants violated 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 by maintaining a policy and practice of requiring Plaintiffs and other similarly situated servers to pay for business losses, such as reimbursement for customer walk-outs.

(c)    Whether Defendants refused and failed to ensure that Plaintiffs and other similarly situated servers were paid for all hours actually worked; and

(d)    Whether Defendants failed to properly pay working time over forty hours per

week, with or without application of the so-called "tip credit," to Plaintiffs and other similarly situated servers.

(e)        Whether there is a genuine bona fide dispute as to the deductions and unpaid wages claimed by the proposed Maryland Class Members, thus rendering Defendants liable to Plaintiffs and all similarly situated employees for statutory damages under the MWPCL, Md. Ann Code LE art. § 3-501 et seq., and if there is a lack of a bona fide dispute, whether Plaintiffs are entitled to receive statutory enhancements in addition to the recovery of unpaid wages/deductions.

112.    The claims of Plaintiffs are typical of the class they seek to represent.  Moreover, the questions of fact and law common to Class Members predominate over any questions affecting only individual members, as all Class members are current or former servers who were not properly paid the minimum wage.  Individual issues will relate solely to the quantum of relief due to the individual Class Members.  Upon information and belief, Plaintiffs believe that the potential Class Members number at least one hundred fifty (150) persons.  The proposed classes are easily ascertainable as the number and identities of the Class Members are readily determinable from employee and payroll records that the Defendants maintain.

113.    Plaintiffs will fairly and adequately protect the interests of the class.  The interests of the named Plaintiffs are consistent with, and not antagonistic to, those of the class.

114.    The named Plaintiffs are represented by competent counsel who are experienced in complex FLSA litigation.  Both lawyers who represent the Plaintiffs (and opt-in Plaintiffs) in this case are licensed to practice in the District of Maryland and have combined experience of more than twenty-five (25) years of practice before the U.S. District Court for the District of Maryland.

115.    A hybrid class/collective action is superior to other available methods for the fair and

efficient adjudication of this controversy and is consistent with the legislative history of the FLSA. Class action treatment will permit a large number of similarly situated persons to receive notice and prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that number individual actions engender.

116.    Maintenance of this action as a hybrid class/collective action would promote the equitable administration of justice because pursuing claims on an individual basis would be disproportionately expensive.

117.    The prosecution of separate claims by individual Class Members would create a risk of inconsistent or varying adjudications with respect to the individual members of that class that would establish incompatible standards of conduct for Defendants.

### Causes of Action

### COUNT I
### (FLSA - Failure to Pay Minimum Wage)
### (All Plaintiffs)

118.    Plaintiffs incorporate paragraphs 1-117 as set forth above, and states that Defendants' actions complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage), because Defendants have at all material times failed to pay Plaintiffs, and other similarly situated employees, the proper minimum wage rate pursuant to 29 U.S.C. § 206, free and clear of deductions and in a timely manner, by: (a) refusing and failing to inform Plaintiffs, and other similarly situated employees, about all of the information related to Defendants' claim of a tip credit legally required to be provided by Defendants; (b) refusing and failing to pay Plaintiffs, and other similarly situated employees, for all hours actually worked; (c) requiring Plaintiffs, and other similarly situated employees, to pay the cost of business losses while Defendants nonetheless claimed a tip credit; and otherwise failing to comply with the requirements of 29 U.S.C. § 203(m)

and 29 U.S.C. § 206.

119.    As a result, Plaintiffs, and other similarly situated employees, have the legal right to receive

the full minimum wage, as required by Federal law and applicable Federal regulations.

**COUNT II**
**(FLSA - Failure to Properly Pay Overtime)**
**(Plaintiffs Ward, Mason and Lust)**

120.    Plaintiffs incorporate paragraphs 1-119, as set forth above, and states, in addition, that

Defendants' actions complained of herein constitute a violation of Section 207 of the FLSA,

because Defendants willfully failed to pay Plaintiffs, and other similarly situated employees,

overtime compensation for all times that they worked in excess of forty (40) hours per week, and

willfully failed to pay overtime compensation at a wage rate of at least one and a half (1 ½) times

the applicable minimum wage rate that Plaintiffs were entitled to receive as their regular rate of

pay with Defendants.

121.    As a result of Defendants' actions complained of herein, Plaintiffs, and other similarly

situated employees, have failed to receive the overtime pay due to them, as required by Section

207 of the FLSA, 29 U.S.C. § 207.

**COUNT III**
**(FLSA – Anti-Tip Retention)**
**(All Plaintiffs)**

122.    Plaintiffs incorporate paragraphs 1-121 as set forth above, and state that the FLSA

expressly prohibits a tip pool from including employees who do not customarily and regularly

receive tips and employers, managers and supervisors.  See 29 U.S.C. § 203(m)(2)(A)(ii).

123.    Furthermore, the FLSA expressly prohibits employers, managers and supervisors from

keeping any portion of tips received by employees for any purpose, regardless of whether the

employer takes a tip credit.  See 29 U.S.C. §203(m)(2)(B).

124.    Defendants' actions complained of herein constitute a violation of 29 U.S.C. §203(m)(2), insofar as Defendants have, at all material times, required Plaintiffs, and other similarly situated employees, to participate in a tip pool with personnel prohibited from receiving tips pursuant to 29 U.S.C. §203(m)(2).

125.    Defendants knew of or showed reckless disregard for the provisions of the FLSA that prohibit employer retention of tips, 29 U.S.C. §203(m)(2)(B).

126.    By maintaining an invalid tip pool that included employee tips being shared with line cooks, steam room workers, and managers, Defendants willfully and intentionally retained Plaintiffs' tips in violation of 29 U.S.C. §203(m)(2).

127.    As a result, Plaintiffs, and other similarly situated employees, have been damaged and are entitled to be compensated for their losses, which are the loss of tips that they otherwise would have been entitled to receive but for Defendants' violation of the FLSA's anti-tip retention provisions, 29 U.S.C. §203(m)(2) and 29 U.S.C. § 216(b).

**COUNT IV**
**(MWHL - Failure to Pay Minimum Wage)**
**(All Plaintiffs)**

128.    Plaintiffs incorporate paragraphs 1-127 as set forth above, and state that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-413 (minimum wage), because Defendants have, at all material times, failed to pay Plaintiffs, and other similarly situated employees, the proper minimum wage rate for all hours worked, free and clear and in a timely manner, and otherwise failed to comply with the requirements of Md. Ann. Code LE Art. § 3-419.

129.    As a result, Plaintiffs have the legal right to receive the full minimum wage, as required by Maryland law and applicable Maryland regulations.

## COUNT V
### (MWHL - Failure to Properly Pay Overtime)
### (Plaintiffs Ward, Mason and Lust)

130.    Plaintiffs incorporate paragraphs 1-129 as set forth above, and state that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-420 (overtime) because Defendants have, at all material times, failed and otherwise refused to compensate Plaintiffs, and other similarly situated employees, for all hours worked in excess of forty hours a work week at a rate of not less than one and a half (1 ½) times their regular rate of pay, as computed under Md. Ann. Code LE Art. § 3-420.

131.    Defendants' actions complained of herein constitute a violation of Section 3-415 of the MWHL, because Defendants failed to compensate Plaintiffs, and other similarly situated employees, at a proper overtime rate for hours worked in excess of forty (40) in a work week at a rate not less than one and one-half times their regular rate of pay, as required by Maryland law.

132.    As a result, Defendants owe Plaintiffs, and other similarly situated employees, overtime wages in the amount of one and a half (1 ½) times the then-applicable minimum wage established by Md. Ann. Code LE Art. § 3-413 (minimum wage), for all work weeks Plaintiffs, and other similarly situated employees, worked in excess of forty (40) hours per week.

## COUNT VI
### (MWPCL Act – Unpaid Wages)
### (All Plaintiffs)

133.    Plaintiffs incorporate paragraphs 1-132 as set forth above, and state that the actions of Defendants, in failing to pay the Plaintiffs for all hours worked; alternatively, in failing to inform the Plaintiffs of the provisions of Md. Ann. Code LE art. § 3-419; alternatively, in refusing to allow Plaintiffs to retain their tipped wages free and clear; alternatively, in failing to pay overtime wages when earned, including payment in proper amounts, are all separate violations of the MWPCL,

Md. LE Art. § 3-502(a)(ii) and § 3-505(a).

134.    That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay minimum wages and overtime wages as applicable under the MWHL.

135.    That impliedly, by operation of law, Plaintiffs, and other similarly situated employees, were entitled to be paid statutory minimum wages and overtime wages by Defendants, for all hours worked, which have gone unpaid.

136.    That there are no bona fide disputes between the parties as to the right of the Plaintiff, and other similarly situated employees, to receive minimum wages or overtime wages consistent with the number of actual hours worked.  That there are no bona fide disputes between the parties as to the right of the Plaintiffs, and other similarly situated employees, to be paid in accordance with the minimum wage and overtime provisions of the MWHL in accordance with the number of actual hours worked.  Defendants knew, or should have known, that they are covered under the MWHL, and that Plaintiffs performed work as employees for which they were not properly and fully compensated.

137.    Plaintiffs, and other similarly situated employees, are thus entitled under MWPCL, Md. LE Art. § 3-507.2 to an award of treble damages and attorneys' fees with respect to the wages, i.e. the MWHL-mandated minimum wages and overtime wages, that have gone unpaid.

## **Prayer**

Based on the foregoing allegations, Plaintiffs respectfully request that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a)    Certify this action as a collective action pursuant to 29 U.S.C. § 216(b), and (i)

compel Defendants to provide all material contact information, including email addresses and phone numbers, for potential opt-in Plaintiffs who performed work as employees at any Higgins Crab House; (ii) issue appropriate Notices as requested in Plaintiffs' Motion for Conditional Certification; (iii) supervise the maintenance of this FLSA collective action; and (iv) supervise and enter appropriate orders allowing this matter to be tried as an FLSA collective action;

(b)　　Certify the claims under the MWHL and MWPC as set forth in Counts IV-VI as class actions (Maryland Class) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(c)　　Order Defendants to pay Plaintiffs (and all similarly situated employees of Defendants who file an opt-in notice in this litigation and proposed Maryland Class Members who fail to opt-out of this litigation), all unpaid minimum wage and overtime payments determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL, as well as a sum of liquidated damages in an amount equal to the amount of any unpaid minimum wage payments and overtime premiums awarded to Plaintiffs (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), pursuant to the FLSA;

(d)　　Order Defendants to pay the Plaintiffs and the proposed Class Members an amount equal to triple the amount of unpaid minimum and overtime wages determined by the Court to be due and owing, under the MWHL, after an accounting has been performed, as Plaintiffs are entitled to such damages under the MWPCL;

(e)　　Allow for discovery in order to obtain a full accounting of the tip pool to determine the amount of monies unlawfully retained by employees who do not customarily and regularly receive tips, and managers, and by extension, to determine what amount of those

monies belong to the Plaintiffs (and all similarly situated employees of Defendants who file an opt-in notice in this litigation);

(f)    Award Plaintiffs and the proposed Class Members their attorneys' fees and costs in pursuing this action;

(g)    Award Plaintiffs and the proposed Class Members interest on any sums determined due and owing from Defendants, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(h)    Grant Plaintiffs and the proposed Class Members any additional relief that the Court deems appropriate and just.

Respectfully submitted,

*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq.
Hoffman Employment Law, LLC
Federal Bar No. 25965
600 Jefferson Plaza, Suite 204
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)

*/s/ Jordan S. Liew (with permission)*
Jordan S. Liew, Esq.
Hoffman Employment Law, LLC
Federal Bar No. 20509
600 Jefferson Plaza, Suite 204
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)

*Attorneys for Plaintiffs*

## **Jury Demand**

The Plaintiffs, by their attorney, hereby demand a jury trial as to all issues triable by a

jury.

*/s/ Howard B. Hoffman*
Howard B. Hoffman