IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Cassidy Ward, et al.** | * |
| | * |
| **Plaintiffs** | |
| | * |
| v. | Case No. 23-207 (EA) |
| | * |
| **Higgins Crab Company, LLC et al.** | |
| | * |
| **Defendants** | |
| _____/ | |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT,
FOR LEAVE TO LATE FILE OPT-INS AND TO DISMISS RULE 23 CLASS ACTION
CLAIMS**

Plaintiffs Cassidy Ward *et al.* (collectively, the "Plaintiffs"), along with Higgins Crab Company, LLC ("HCC") and Robert Higgins ("R. Higgins") (collectively, the "Defendants"), by and through their respective undersigned counsel, file this Joint Motion for Approval of Settlement Agreement, for Leave to Late File Opt-Ins, and to Dismiss Rule 23 Class Action Claims. In support, the Parties state as follows:

**I.     Introduction**

On or around January 25, 2023, Plaintiff Cassidy Ward, along with named Plaintiffs Avery Dawson, Melanie Mason, Taylor Hyde and Benjamin Lust, filed the instant lawsuit, (ECF Doc. 1), alleging a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and putative Fed. R. Civ. P. 23 class action claims pursuant to the Maryland Wage and Hour Law, Md. Code L&E § 3-401 *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code L&E § 3-501 *et seq.* ("MWPCL").

On May 26, 2023, Plaintiffs filed an Unopposed Motion for Conditional Certification, (ECF Doc. 29), which the Court granted on July 6, 2023. (ECF Doc. 32). There was a sixty-day

opt-in window following the mailing of a class notice and opt-in form to potential class members.[1] During this opt-in period, fifty-eight (58) opt-in notices were returned and filed with the Court. (ECF Docs. 35-58, 60-93).

Discovery commenced, including the exchange of wage and hour and wage payment records, and the deposition of one of Defendants' General Managers. Plaintiffs also retained a damage calculations expert to compute the damages for the Plaintiffs.

On or about mid-January 2024, Plaintiffs' Counsel was contacted by two class members, Sara Ellis and Celia Rakde, (collective, the "Late Opt-in Plaintiffs"), who wished to belatedly opt into the lawsuit. This issue was raised with the Defendants, but it was not resolved until the settlement conference on February 15, 2024.

The settlement conference was held remotely and before Judge A. David Copperthite. Plaintiffs were represented by a settlement committee composed of Cassidy Ward, Avery Dawson, Melanie Mason, Alexandra Curcio, Paige Hastings, Grayson McIntyre, Caleb Mindte, and Taylor Reading. After several hours, the Parties were able to reach a settlement on the principal terms as to the sixty-three (63) Plaintiffs, as well as the two Late Opt-in Plaintiffs. The settlement did not include the putative Rule 23 class.

A settlement agreement was drafted, and after several rounds of disputes and discussions over various terms, it was finalized on April 4, 2024 and circulated for signature to all Parties.

The Parties believe the settlement is fair and reasonable to all Plaintiffs; is a compromise that contemplates the significant factual and legal disputes between the parties; and involves a separately negotiated payment of attorneys' fees to Plaintiffs' counsel. (Exh. 2; Hoffman Decl. ¶¶

---

[1] Notice was also facilitated by email, Facebook, and in instances of returned mail, by text message. *See* (ECF Doc. 32, pg. 2-3).

5, 11). For the following reasons, the Court should grant the parties' Joint Motion for Approval of Settlement Agreement and Leave to Late File Opt-Ins

## II. Background

Plaintiffs were former tipped employees of Defendant Higgins Crab Company, LLC that were paid a sub-minimum tipped wage. The Plaintiffs overwhelmingly worked as servers and were paid at a rate of $3.63/hour plus tips, although some Plaintiffs worked some shifts in other tipped positions such as a busser or expo, where they were paid at a different, sub-minimum hourly rate.

Plaintiffs alleged that they were not informed of the tip credit and were subject to an unlawful tip pool because those tips went to back-of-the-house employees, such as cooks, as well as managers, and as a result, Defendants were not entitled to take a tip credit and pay Plaintiffs below the minimum wage. Plaintiffs also alleged that Defendants failed to pay them overtime wages at the appropriate overtime rate. Finally, certain Plaintiffs alleged that Defendants had engaged in hour shaving and therefore failed to pay them at least the minimum wage for every hour they worked.

Defendants deny all allegations, contending that a tip credit notice was provided verbally and posted, that the tip pool was entirely voluntary, and that Plaintiffs were otherwise paid at the correct rate for every hour they worked. Defendants have also denied the applicability of any liquidated or statutory damages on the basis that Defendants had always acted in good faith.

While a settlement was reached between the Parties before the completion of discovery, ample discovery was conducted and exchanged in order for the Parties reasonably understand the respective strengths and weaknesses of their case, and for damages to be calculated so the value of the case could be properly understood.

Before substantial time and expense had to be expended by both Parties in furtherance of discovery (including the taking of numerous depositions), the Parties agreed to settlement conference on February 15, 2024, and after substantial negotiations, and with the assistance of Judge Copperthite, a settlement on the principle terms was reached as to the Plaintiffs and the two Late Opt-in Plaintiffs. A settlement agreement was finalized on April 4, 2024. *See* (Exh. 1; Settlement Agreement).

As part of that settlement agreement, Defendants agree to pay Six Hundred Seventy-Eight Thousand, Nine Hundred and Ninety-Nine U.S. Dollars and Ninety-Two Cents ($678,999.92) to the Plaintiffs pursuant to the breakdown table presented in the settlement agreement, which was calculated based on Plaintiffs' experts damage calculations, *see* (Exh. 1; Settlement Agreement, pg. 2-4), plus an additional $150,000.00 for attorneys' fees and costs, for a grand total of $828,999.92.

The total amount received by the Plaintiffs includes full liquidated damages (2.0x) on Plaintiffs' unlawfully retained tips claim, $15,000.00 in service fees, *see infra* ¶V, and 1.88x Plaintiffs' calculated damages for their unpaid minimum and overtime wage claims using a "blended" [2] base damage value.[3]

---

[2]     Defendants had calculated a base damage value that relied solely on their wage and hour and wage payment records, while Plaintiffs had calculated a base damage value that included employees' recollections for shaved hours. The Parties compromised by negotiating around a "blended" base damage value that was essentially the average of the two values calculated by each side.

[3]     Under the base damage value calculated by Plaintiffs (Plaintiffs' absolute possible maximum), Plaintiffs are still receiving 1.65x their damages. Likewise, using Defendants' base damage value, Plaintiffs are receiving 2.19x their damages.

**III.   Analysis**

a. <u>Settlements under the FLSA</u>

"Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement." *Diaz v. Pho Eatery, Inc.*, Civil Action No. DKC 17-2968, 2019 U.S. Dist. LEXIS 85938 (D. Md. May 21, 2019) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945)). The first exception occurs when the Secretary of Labor supervises the payment of back wages to employees. Under the second exception, which is applicable here, "a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id*. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

This Court has previously noted that the Fourth Circuit has not directly considered the factors to be addressed in a determination of settlement approval, but that the district courts in the Fourth Circuit have generally applied the factors set forth in *Lynn's Food Stores, Inc.*, 679 F.2d 1350, which is a case from the United States Court of Appeals for the Eleventh Circuit. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407-08 (D. Md. 2014). Under this standard, the settlement agreement between the parties generally should be approved if it "reflect[s] a fair and reasonable resolution of a bona fide dispute over FLSA provisions, which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the

settlement [], and (3) the reasonableness of the attorneys' fees, if included in the agreement." *Id*. (quotations and citations omitted).

FLSA settlements will be approved if the settlement reflects a "reasonable compromise" over the issues in dispute, *Lopez v, NTI, LLC,* 748 F.Supp. 2d 471, 478 (D. Md. 2010), provided that the parties seeking approval of a proposed settlement have provided the court with sufficient information to examine and assess such disputed matters. *Lane v. Ko-me, LLC,* 2011 WL 3880427, *2 (D. Md. Aug. 31, 2011). Importantly, there is a "'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether an FLSA settlement is fair, adequate, and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955 at *10 (E.D. Va. Sept. 28, 2009).[4] A settlement is not a trial, and a Court's role is more of a balancing of the likelihoods than actual determinations of fact and law. *Id*. Compromise is the essence of settlement, and "a trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id*. "A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel." *Id*. "Courts have recognized a role for less-than-full-value compromise in the FLSA settlement process." *Galvez v. Americlean Services Corp.*, 2012 WL 2522814 at *4 (E.D. Va. Jun. 29, 2012) (citing *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D.

---

[4] *Lomascolo* has been cited by this Court on several occasions. *See Nyamira v. Little Kampala Services, LLC*, 2018 WL 5026371, at *2 (D. Md. Oct. 17, 2018); *Melendez v. Declercq, Inc.*, 2016 WL 3387235, at *4 (D. Md. Jun. 14, 2016); *Kianpour v. Restaurant Zone, Inc.*, 2011 WL 5375082, at *2 (D. Md. Nov. 4, 2011); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *1 (D. Md. Aug. 31, 2011); *Leigh v. Bottling Group, LLC*, 2011 WL 1231161, at *5 (D. Md. Mar. 29, 2011); and *Lopez v. NTI, LLC*, 748 F.Supp. 2d 471, 478 (D. Md. 2010).

41, 57-58 (E.D.N.Y. 2010) (approving settlement of FLSA claims at thirteen to seventeen percent of maximum recovery)).

### b. *Bona Fide* Dispute

In determining whether a *bona fide* dispute exists regarding the FLSA claims, this Court should "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408. Plaintiffs plead causes of action against Defendants under the FLSA, MWHL, and MWPCL and alleged that Defendants failed to pay all minimum and overtime wages and tips owed. (ECF Doc. 1). Defendants have denied all allegations, contending that a proper tip credit notice was provided verbally, that the tip pool to the back of the house was voluntary, and that their hour of work records are accurate. Moreover, they have contended that liquidated and statutory damages are inapplicable because they have acted in good faith. The success and viability of these claims would have rested on the competing testimony of Plaintiffs and Defendants and the credibility determinations of a jury. Complete success by either Party was therefore an uncertainty.

On the other hand, substantial time and expense would be required by both Parties to continue prosecuting this case. Although significant discovery had been conducted prior to the settlement conference, substantial discovery still remained, including written discovery to Plaintiffs, and numerous additional depositions by both Parties. Furthermore, because this case was originally styled as a hybrid collective *and* Rule 23 class action, there likely would have been substantial litigation over Rule 23 class certification, and had Plaintiff prevailed, Rule 23 class damages still needed to be performed since the case had been bifurcated as to Rule 23 class damages. *See* (ECF Doc. 103, 104). As a practical matter, there were also concerns over whether or not these Defendants could survive a Rule 23 class-wide judgment given the putative class

numbered nearly four hundred. Clearly, a *bona fide* dispute over the amounts owed and the liability of the Defendants existed between the Parties and the Court should approve the proposed Settlement Agreement, which was entered into to avoid unnecessary expense and litigation in the face of uncertain success.

      c. <u>Fairness and Reasonableness</u>

To determine whether a proposed settlement agreement is fair and reasonable, the Court should look to the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Duprey* 30 F. Supp. 3d at 409 (quoting *Saman v. LBDP, Inc.*, Civil Action No. DKC 12-1083, 2013 U.S. Dist. LEXIS 83414, *3 (D. Md. June 13, 2013). This analysis applies only to Plaintiffs' FLSA claims as the Court's approval is not required for Plaintiffs' non-FLSA claims brought under Maryland law. *See Amaya v. Young & Chang, Inc.*, No. PWG-14-749, 2014 WL 3671569, at *3 (D. Md. July 22, 2014).

      i. *Extent of Discovery*

The purpose of this inquiry is to determine whether "the Parties had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" *Lomascolo*, 2009 WL 3094955 at *11 (E.D. Va. Sep. 28, 2009) (citation omitted). At the time the Parties reached an agreement, substantial discovery had been exchanged including thousands of pages of wage and hour and wage payment records as well as sales reports for all sixty-three (63) Plaintiffs and the two Late Opt-in Plaintiffs. Additionally, Plaintiff had already taken the deposition of one of Defendants' General Managers. Plaintiffs were able to successfully calculate

the amount of unpaid minimum and overtime wages as well as unlawfully retained tips they alleged they were owed, and factor in any allegations of shaved hours from certain Plaintiffs.

    ii.   *Stage of the Proceedings/Complexity*

This factor analyzes whether the "proceedings advanced to a stage sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that it would be difficult and costly undertaking to proceed to the trial of this case." *Id.* at *10. That factor, too, is satisfied. As indicated above, Plaintiffs' counsel has had sufficient time and information to review the Plaintiffs' alleged underpayments and calculate their damages. The Parties have had time to investigate and also engaged in considerable discussions regarding the viability of Plaintiffs' claims and defenses raised in this case.

As to complexity, although the issues at bar are not overly complicated, a few factors increased the complexity of litigation in this case. First, there were sixty-three (63) Plaintiffs and two Late Opt-in Plaintiffs who worked across two different locations, across a three-year lookback period. Some Plaintiffs held different positions, received differing rates of pay while still working as a server, necessitating dual-occupation overtime calculations. Second, each Plaintiffs' unlawfully retained tips claim had to independently calculated based on their sales report data. Third, only a subset of the Plaintiffs had time shaving claims, which were factored in and included as part of Plaintiffs' expert's damage calculations. Relatedly, the volume and complexity of these damages calculations was so substantial, that the Parties had to ask the Court to bifurcate Rule 23 class damages, and the Settlement Conference Magistrate Judge for an extension on their deadlines to exchange demands and offers pre-settlement conference, just to give the expert a couple extra

weeks to get his damage calculations completed in time without having to completely reschedule the settlement conference. *See* (ECF Doc. 103).

    iii.  *Absence of Fraud/Experience of Counsel/Opinions of Counsel*

All Parties are represented by experienced counsel, who negotiated a fair and reasonable settlement for the Parties after hours of extensive negotiations that were overseen by Judge Copperthite. No fraud or collusion occurred and the settlement was reached through protracted, arms-length discussions. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12 (citations omitted).

The two attorneys representing Plaintiffs (Howard Hoffman and Jordan Liew) have over thirty (30) cumulative years of experience practicing law, and Defendants were similarly represented by experienced and capable counsel. All counsel believes the proposed settlement agreement is fair and reasonable.

    iv.  *Amount of the Settlement in Relation to The Potential Recovery*

As set forth above, a *bona fide* dispute exists between the Parties on multiple issues. Defendants denied all allegations, as well as liquidated and statutory damages.

Given Defendants' absolute denial of liability, the fact that Plaintiffs are still receiving nearly full recovery (1.88x) under the FLSA using a "blended" base damages value, and are in fact, even under Plaintiffs' base damages value, still receiving a substantial 1.65x their damages. *See Dominguez v. Microfit Auto Parts, Inc.*, No. CV CBD-18-0534, 2019 WL 423403, at *6 (D. Md. Feb. 4, 2019) ("Accordingly, Plaintiffs could have recovered significantly more at trial or significantly less. The unpredictability of the outcome at trial makes settlement an ideal option for

both parties. Further, in light of that unpredictability, the fact Plaintiffs are recovering the amount of damages that they are indicates this is the better option for Plaintiffs.")

The settlement committee representing the Plaintiffs agreed to negotiate around the blended base damage by recognizing that Plaintiffs may not wholly prevail or even prevail at all on their hour shaving claim. The decision to accept and negotiate around the blended base damages value was therefore as much a decision made out of practical considerations based on a realistic evaluation of the strengths and weaknesses of Plaintiffs' claims, as it was made from the general spirit of compromise given the settlement conference environment.

Indeed, it is worth noting that under Defendants' base damages value, which was a distinct possibility at trial should a jury have been unconvinced that there was any time shaving going on, Plaintiffs are actually receiving 2.19x their unpaid minimum and overtime wage damages, which is in excess of their full relief under the FLSA. The Parties submit that when an employee is receiving full compensation under the FLSA, a lesser degree of judicial scrutiny is required. *See Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) ("We do not say what, if any, judicial oversight applies under Lynn's Food when full satisfaction of the FLSA is made"); *Crooms v. Lakewood Nursing Cntr., Inc.*, 2008 WL 398933, *1 (M.D. Fla. 2008) ("When the defendant represents that it has offered the plaintiff at least full compensation of his claim, and the plaintiff has not disputed that representation, the case does not involve a compromise and there is no need for judicial scrutiny."); *Mackenzie v. Kindred Hospitals East, LLC*, 276 F.Supp.2d 1211, 1217 (M.D. Fla. 2003).

d. Attorneys' Fees & Costs

There remains the issue of Attorneys' Fees and Costs. "[W]here a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must

also 'be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Saman*, 2013 WL 2949047, at *3 (*quoting Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011)); *see also Kianpour*, 2011 WL 5375082, at *3. "In making that assessment, courts typically 'use the principles of the traditional lodestar method as a guide.'" *Lane*, 2011 WL 3880427, at *3 (citation omitted). The lodestar amount is "defined as a reasonable hourly rate multiplied by hours reasonably expended." *Riveros v. WWK Construction, Inc.*, No. PJM 15-193, 2015 WL 5897749, at *4 (D. Md. Oct. 5, 2015) (citation omitted).

The Parties agreed that Defendants will pay to Plaintiffs' Counsel the total sum of One Hundred Fifty Thousand U.S. Dollars and 00/100 Cents ($150,000.00), in full settlement of all attorneys' fees, costs, and expenses arising out of this case. These fees and costs are appropriate. With sixty-three (63) Plaintiffs and another two Late Opt-in Plaintiffs, substantial time and expense was required to advance this collective action to a settlement. The calculation of damages alone was a tremendous endeavor, requiring the review of thousands of pages of wage and hour and wage payment documents, and conversations with each Plaintiff to review the accuracy of those records and record any recollected hours when time shaving was alleged. So much work was required for the calculation of damages that the Parties had to ask the Court to bifurcate Rule 23 class damages, and the Settlement Conference Magistrate Judge for an extension on their deadlines to exchange demands and offers pre-settlement conference, just to give the expert a couple extra weeks to get his damage calculations completed in time without having to completely reschedule the settlement conference. *See* (ECF Doc. 103).

Plaintiffs' counsel's billing rates are slightly higher than the rates published in the Appendix B to the Local Rules (2014), but the effective hourly rates after the exercise of billing

discretion and in the interest of settlement and compromise, render these rates lower than the presumptively reasonable rates published ten years ago in Appendix B.[5] The applicable lodestar rate claimed by Howard Hoffman is $475.00 per hour, and the applicable lodestar rate for Jordan Liew is $315.00 per hour. (Exh. 2; Hoffman Decl. ¶ 7). The costs in this case alone were $31,783.23 (and will be higher, given the costs to distribute settlement checks to all 65 settlement class members via U.S. Priority Mail (tracking)). Plaintiffs' counsels' billing records are attached hereto as Exhibit 3. (Exh. 2 & 3; Hoffman Decl. ¶ 6 & Billing Records).

The fee and cost settlement amounts are agreeable to all Parties.

The Parties also submit that the attorneys' fees and costs were negotiated separately, and not agreed upon until February 26, 2024, nine days after a resolution had been reached with respect to the Plaintiffs' recovery at the February 15, 2024 settlement conference before Judge Copperthite. Given the substantial relief to the Plaintiffs as to their respective FLSA unpaid wage and retained tips claims, and the fact that fees and costs were negotiated separately and secondarily to the Plaintiffs' personal outcome, judicial scrutiny of the amount of fees and costs to be paid is not necessary.[6] The Court can take notice that counsel has pursued this case vigorously on behalf

---

[5] The total proposed recovery of legal fees and costs of $150,000.00 is considerably less than the amount that counsel could claim under the "percentage of the fund" method to determining appropriate fees in a class action. *See, e.g., Boyd v. Coventry Healthcare, Inc.*, 299 F.R.D. 451, 464-466 (D. Md. 2014) (observing that "percentage of recovery" method is usually 25-30% of the value of the class settlement, and granting an award of fees/costs in the amount of 28%); *Acevedo v. Sw. Airlines Co.*, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) ("I find that the requested attorneys' fee award of 33.33% of the gross recovery is reasonable and in line with similar awards."), *report and recommendation adopted*, No. 1:16-CV-00024-MV-LF, 2020 WL 85132 (D.N.M. Jan. 7, 2020).

[6] It is Plaintiffs' position that if a motion demonstrates that a proposed fee award was agreed upon separately and without regard to the amount paid to the Plaintiffs, then unless there is reason to believe that the Plaintiffs' recovery was somehow adversely affected by the amount of fees to be paid to the attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiff's counsel. *See Phelps v. Detail USA, Inc.*, 2012

13

of sixty-three (63) Plaintiffs and two Late Opt-in Plaintiffs, and have represented the Plaintiffs for fifteen (15) months.

Therefore, the Parties respectfully request the Court approve the Fees and Costs to be paid pursuant to this settlement.

e. Continuing Jurisdiction

With respect to the issue of continuing jurisdiction, the Parties have agreed to request that the Court maintain continuing jurisdiction over this case to supervise the settlement payments. This provision fulfills the Court's proper supervisory role in assuring that no FLSA case is dismissed absent fair and reasonable wage payment to plaintiff workers. The Parties bring to the Court the following paragraph set forth in the Settlement Agreement:

> **6.     CONTINUING JURISDICTION / DISMISSAL WITH PREJUDICE**: The Parties agree, and the Court by its approval of this Agreement agrees, that the Court shall have continuing jurisdiction to enforce the terms of this Agreement, resolve any disputes arising out of the Agreement, and supervise all payments by the Defendants of all consideration to the Plaintiffs and Plaintiffs' counsel. For the avoidance of doubt, no new action may be initiated on behalf of a new plaintiff pursuant to this section with the exception of the late filing of opt-ins for Plaintiffs Ellis and Radke pursuant to Paragraph 5, above. Within twenty-one (21) days after the last payment made to Plaintiffs and Plaintiffs' counsel by Defendants (including any payment for attorneys' fees and costs), the Parties agree to file a Joint Stipulation of Dismissal with the Court, dismissing the Plaintiffs' claims against the Defendants in the Lawsuit with prejudice. The Parties further agree to execute and/or have executed by their respective counsel, any such additional documents as may be reasonably necessary to effectuate the dismissal with prejudice of the Plaintiffs' claims against Defendants in the Lawsuit

By approving this Settlement Agreement, the Court is agreeing to maintain continuing jurisdiction over this case, and once final payment is made, counsel will so notify the Court and

---

WL 254113, at *2 (M.D. Fla. Jan. 19, 2012) ("[W]hen attorney's fees are negotiated separately from payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents.'") (citation omitted). However, the approach in *Phelps* has not been embraced in this District, *Dominguez*, 2019 WL 423403, at *4. Regardless, the fees/costs have been negotiated separately and secondarily in this case.

the case shall be dismissed with prejudice. (Appropriate language is set forth in the proposed Order attached hereto to this Motion).

### IV.     Leave to Late File Opt-in Notices

There remains an additional issue involving the proposed late filing of opt-in notices for Sara Ellis and Celia Radke, the two Late Opt-in Plaintiffs. Both Late Opt-in Plaintiffs have claims that are still within the statute of limitations. The Parties' negotiated settlement included a resolution for both Ms. Ellis and Ms. Radke. The Late Opt-in Plaintiffs naturally wished to participate and recover in the settlement, and to avoid having to file their own, separate FLSA lawsuit, and the Defendants wished for finality.

Mechanically, however, the window for an employee or former employee to opt-in has long closed, and the Settlement Agreement is contingent upon the approval of and granting of leave to late-file opt-in notices for Ms. Ellis and Ms. Radke. *See* (Exh. 1; Settlement Agreement, ¶ 5). Therefore, in order for the two Late Opt-in Plaintiffs be properly included in the settlement for this matter, the Parties jointly request the Court to grant leave for Ms. Ellis and Ms. Radke to late file their opt-in notices. No Party will be prejudiced by their late inclusion to this lawsuit, judicial economy will be served by avoiding the filing of a separate FLSA lawsuit, and the FLSA's remedial purpose will also be served by permitting their inclusion.

### V.     Service (Incentive) Fees Are Reasonable

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). Eight Opt-in Plaintiffs will be receiving service fees.

To determine whether a service or incentive payment is warranted, it is important to consider the actions that the intended class representative (beneficiary of the service fee) took to

protect the interests of the class, the degree the class benefited, and the amount of time and effort put forth by those who would receive service (incentive) fees. *See Alloways et al. v. Cruise Web, Inc.*, CBD 172811, 2019 WL 1902813, *14 (D. Md. Apr. 29, 2019).

[PLAINTIFFS SUBMITS THE FOLLOWING:  All service fee recipients participated during the multi-hour settlement conference as part of Plaintiffs' settlement committee and represented the interests of all Plaintiff.  Plaintiffs Alexandria Curcio, Paige Hastings, Grayson McIntyre, Caleb Mindte, Taylor Reading will each receive a $1,500.00 service fee for their participation in the settlement conference.  Additionally, Plaintiffs Cassidy Ward, Melanie Mason, and Avery Dawson will each receive a $2,500.00 service fee; not only did Plaintiffs Ward, Mason and Dawon also participate as a member of the settlement committee, they are named Plaintiffs, with each contributing substantial time and effort to research and locate legal counsel, and then to work with their lawyers in the pleading of the lawsuit.  Ward, Mason and Dawson also declined earlier settlement offer.  In lending their names to the lawsuit, they exposed themselves to a certain degree of notoriety, in order to initiate this lawsuit.

For all the significant time and energy Plaintiff Ward, Mason and Dawson put into advancing this litigation (and the resulting settlement), the service fee she is receiving is extremely modest. These awards track the size of payments to participating plaintiffs in other class action settlements in this Circuit with lesser facts and shorter case history. *See e.g., Trombley v. National City Bank,* 826 F. Supp. 2d 179, 207 (D.D.C. 2011) ($5,000 award); *Alloways*, 2019 WL 1902813 at *14 (where the Court approved a $6,000 incentive payment and noted that a comparison of the incentive award to the average net award showed that the incentive award was "relatively modest."); *see also Edelen*, 2013 WL 3816986 at *16 (holding that an incentive award of $1,000 for the lead plaintiff, in comparison to his settlement award of $688.00, is relatively modest and

reasonable); *Wells v. Allstate Ins. Co.,* 557 F. Supp. 2d 1, 8-9 (D.D.C. 2008) ($10,000 award); *Cohen v. Warner Chilcott Pub. Ltd. Co.,* 552 F. Supp. 2d 105, 123 (D.D.C. 2007 ($7,500 award).

Therefore, in light of their roles in helping to achieve a favorable resolution for the class, their continuous and lengthy support (this case is approaching 2 years in length) in advancing this litigation, and the relative modesty of the award, these service fees are warranted.]

### VI.     No Notice is Required To Putative Rule 23 Class Members

The final issue requiring the Court's attention pertains to Plaintiffs' putative Rule 23 class action claims. This case was filed as a hybrid FLSA collection action and Rule 23 class action. *See* (ECF Doc.1). However, while an Unopposed Motion for Conditional Certification has been filed and approved by the Court in this case, (ECF Doc. 29 & 32), no motion has been filed, and Plaintiffs have not sought any form of Rule 23 class certification.

The Defendant requested as part of the settlement discussions, and the Plaintiffs agreed, that no notice of this settlement would be sent to putative Rule 23 Class Members (at least, those who had not opted into the case pursuant to 29 U.S.C. § 216(b)). The Settlement Agreement is contingent on the Court's approval of this Motion and the dismissal of the Rule 23 class action claims without notice. *See* (Exh. 1; Settlement Agreement, ¶ 5).

Plaintiffs' counsel agreed to this provision because no such notice appears necessary. The U.S. Court of Appeals for the Fourth Circuit has required notice to putative plaintiffs only where pre-certification settlement may involve prejudice and collusion. *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1315 (4th Cir. 1978). In *Shelton*, the Fourth Circuit held that "in the pre-certification settlement context of an action begun as a class action, a District Court is not automatically obligated to order notice to all putative class members under the terms of 23(e) but should, after proper inquiry, determine whether the proposed settlement and dismissal are tainted by collusion

or will prejudice absent putative members with a reasonable 'reliance' expectation of the maintenance of the action for the protection of their interests."); *see also Gardner v. GMAC, Inc.*, 796 F.3d 390, 398-99 (4th Cir. 2015) (observing that before certification, absent putative class members have "at best a mere 'reliance interest,' the strength of which will vary with the facts of the particular case." (*quoting Shelton*, 582 F.2d at 398-99)).

As one Court stated, "[t]he primary interest of putative class members is their reliance interest in the pending litigation; the primary purpose of the notice to the putative class is to inform these individuals that they may no longer rely on the asserted class action vehicle, so that these putative class members may then commence their own action." *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 440-41 (D. N.J. 2000).

As a more recent case opinion (sharing similar federal/state wage and hour claims) explained:

> With respect to a case's publicity, the Anderberg court explained that "absent class members may have a reliance interest in the dismissal of the class action ... [t]his reliance interest can become a danger when the filing of a class complaint received attention by the news media." 176 F.R.D. at 690 (citing Shelton v. Pargo, Inc., 582 F.2d 1298, 1315 (4th Cir. 1978)). Essentially, the less publicity a proposed class action receives, the less likely it is that absent, putative members will be prejudiced by dismissal of the proposed action. If such members have no knowledge of a proposed action, they are not relying on the action to resolve their claims, so its dismissal does not prejudice them. Here, the Court is not aware of any publicity the case has received. Further, no Rule 23 class was certified, so no notice of a pending Rule 23 action was ever distributed. The Court has no reason to suspect that absent Rule 23 class members are relying on the proposed class action or that they will be prejudiced by dismissal without notice. Because the court has no reason to suspect a reliance interest on behalf of absent parties, the Court is satisfied that dismissal without class notice will not result in prejudice due to publicity.

*Jones v. H&J Restaurants, LLC*, 2020 WL 6877577 at *7 (W.D. Ky. Nov. 20, 2020).

Here, there can be no suggestion whatsoever of collusion. The parties worked through counsel, over the span of several months, as part of the Court-supervised mediation process. Both parties compromised over many issues.

18

Other than the 63 workers (and 2 late opt-ins) who opted into this case and have signed the settlement agreement, Plaintiffs are not aware of any worker who is "relying" on the class to recover unpaid wages on their behalf and are uninformed as to this settlement agreement.

Accordingly, the Court may approve this settlement agreement, even though the case involves putative Rule 23 claims, without notifying putative absent class members. The Court's approval of this settlement agreement represents the Court's agreement that notice to putative Rule 23 class members is not necessary under the circumstances of this case.

### VII. Conclusion

For the foregoing reasons, this Court should enter an Order granting the Parties' Joint Motion for Approval of Settlement Agreement, For Leave to Late File Opt-Ins, and to Dismiss Rule 23 Class Action Claims, and dismiss this matter with prejudice following the payments by all Parties.

Respectfully submitted,

*/s/ Howard B. Hoffman*
Howard B. Hoffman, Bar. No. 25965
Jordan S. Liew, Bar No. 20509
2400 Research Blvd., Suite 380
Rockville, Maryland 20850
(301) 251-3752
(301) 251-3753 (fax)
hhoffman@hoholaw.com
jliew@hoholaw.com

*Attorneys for Plaintiffs*

*/s/ (with permission)*
Richard A. DeTar, Bar No. 22437
Steven A. Brown, Bar No. 18994
Strider L. Dickson, Bar No. 27157
McAllister, DeTar, Showalter & Walker LLC
706 Giddings Avenue, Suite 305
Annapolis, Maryland 21401
(410) 934-3903
(410) 934-3933 (fax)
rdetar@mdswlaw.com
sbrown@mdswlaw.com
sdickson@mdswlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of May, 2024, a copy of the foregoing Joint Motion for Approval of Settlement Agreement, for Leave to Late File Opt-ins, and to Dismiss Rule 23 Class Action Claims, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

/s/  *Jordan S. Liew*
Jordan S. Liew